**RECORD NO. 14-4714**

In The

# United States Court of Appeals

### For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee*,

**v.**

## ALVIN DWIGHT FAIR,

*Defendant – Appellant*.

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
AT STATESVILLE**

_____

**BRIEF OF APPELLANT**

_____

**Ross Richardson, Executive Director**
FEDERAL DEFENDERS OF
 WESTERN NORTH CAROLINA, INC.

**Ann L. Hester**
FEDERAL DEFENDERS OF
 WESTERN NORTH CAROLINA, INC.
**129 West Trade Street, Suite 300
Charlotte, North Carolina  28202
(704) 374-0720**

*Counsel for Appellant*

**THE LEX GROUP** ♦ 1108 East Main Street ♦ Suite 1400 ♦ Richmond, VA  23219
(804) 644-4419 ♦ (800) 856-4419 ♦ Fax: (804) 644-3660 ♦ www.thelexgroup.com

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................. iii

JURISDICTIONAL STATEMENT ...................................................................... 1

STATEMENT OF THE ISSUES ........................................................................... 1

STATEMENT OF THE CASE ............................................................................... 2

    I.     The Offense Conduct ............................................................... 2

    II.    The Criminal Charges and Conviction ................................... 4

    III.   The Original Sentencing Proceeding .................................... 5

    IV.   The Motion to Vacate and Resentencing ............................... 6

SUMMARY OF ARGUMENT ............................................................................. 9

ARGUMENT ......................................................................................................... 10

    I.     The district court erred when it concluded that a sentencing
         manipulation argument cannot justify a downward variance ............. 10

         A.    Standard of Review ................................................................. 10

         B.    The district court's failure to recognize its discretion to
               consider Fair's sentencing manipulation argument
               resulted in prejudicial, reversible error ..................................... 11

    II.    The district court plainly erred when it left in place supervised
         release terms that were based on an incorrect mandatory
         minimum and exceeded the statutory maximum ................................. 17

    A.    Standard of Review ................................................................ 17

    B.    The district court plainly erred when left the original terms of supervised release in place when resentencing Fair ....................................................................................... 17

CONCLUSION ........................................................................................ 22

REQUEST FOR ORAL ARGUMENT ................................................... 22

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Gall v. United States*,
    552 U.S. 38 (2007).........................................................................................11

*Johnson v. United States*,
    520 U.S. 461 (1997).......................................................................................17

*Koon v. United States*,
    518 U.S. 81 (1996).........................................................................................14

*United States v. Beltran*,
    571 F.3d 1013 (10th Cir. 2009) ...................................................................15

*United States v. Booker*,
    543 U.S. 220 (2005).................................................................................11, 15

*United States v. Brewer*,
    520 F.3d 367 (4th Cir. 2008) .......................................................................14

*United States v. Ciszkowski*,
    492 F.3d 1264 (11th Cir. 2007) ...................................................................15

*United States v. Cotton*,
    535 U.S. 625 (2002).......................................................................................17

*United States v. Curry*,
    523 F.3d 436 (4th Cir. 2008) .......................................................................10

*United States v. Fair*,
    246 F. App'x 238 (4th Cir. 2007)...................................................................6

*United States v. Good*,
    25 F.3d 218 (4th Cir. 1994) .........................................................................20

*United States v. Hargrove,*
625 F.3d 170 (4th Cir. 2010) .........................................................................11

*United States v. Herder,*
594 F.3d 352 (4th Cir. 2010) ................................................................*passim*

*United States v. Hughes,*
401 F.3d 540 (4th Cir. 2005) .........................................................................17

*United States v. Jones,*
18 F.3d 1145(4th Cir. 1994) .........................................................9, 12, 13, 15

*United States v. Layton,*
564 F.3d 330 (4th Cir. 2009) .........................................................................10

*United States v. Lynn,*
592 F.3d 572 (4th Cir. 2010) .........................................................................12

*United States v. Maxwell,*
285 F.3d 336 (4th Cir. 2002) ...................................................................21, 22

*United States v. McManus,*
734 F.3d 315 (4th Cir. 2013) .........................................................................10

*United States v. Olano,*
507 U.S. 725 (1993).......................................................................................21

*United States v. Pratt,*
239 F.3d 640 (4th Cir. 2001) .........................................................................20

*United States v. Roberson,*
517 F.3d 990 (8th Cir. 2008) ...................................................................12, 16

*United States v. Simmons,*
649 F.3d 237 (4th Cir. 2011) .........................................................6, 17, 18, 19

*United States v. Torres*
    563 F.3d 731 (8th Cir. 2009) ........................................................................15

*Yousuf v. Samantar*,
    552 F.3d 371 (4th Cir. 2009), *affd*,
    560 U.S. 305 (2010) .......................................................................................13

## **STATUTES**

18 U.S.C. § 922(g) ..........................................................................................6

18 U.S.C. § 922(g)(1) ......................................................................................4

18 U.S.C. § 924(c) ...........................................................................................9

18 U.S.C. § 924(c)(1) ......................................................................................4

18 U.S.C. § 3231 ..............................................................................................1

18 U.S.C. § 3553 ............................................................................................11

18 U.S.C. § 3559(a)(2) ...................................................................................18

18 U.S.C. § 3559(a)(3) ...................................................................................18

18 U.S.C. § 3583 ............................................................................................20

18 U.S.C. § 3583(b) .......................................................................................18

18 U.S.C. § 3583(b)(1) .........................................................................18, 19, 20

18 U.S.C. § 3583(b)(2) ...................................................................................18

18 U.S.C. § 3742 ..............................................................................................1

21 U.S.C. § 841 ...........................................................................4, 6, 18, 19

21 U.S.C. § 841(b)(1) ................................................................................5, 19

21 U.S.C. § 841(b)(1)(A) .........................................................................17, 19

21 U.S.C. § 841(b)(1)(B) ...................................................................*passim*

21 U.S.C. § 841(b)(1)(C) ......................................................7, 9, 19, 20

21 U.S.C. § 846 .........................................................................................4

21 U.S.C. § 851 ......................................................................................4, 5

28 U.S.C. § 1291 .....................................................................................1

28 U.S.C. § 2255 .....................................................................................6

## JURISDICTIONAL STATEMENT

Alvin Fair ("Fair") appeals the judgment upon resentencing entered on September 2, 2014, in the United States District Court for the Western District of North Carolina. JA 551. Fair filed a timely notice of appeal on September 12, 2014. JA 549. The district court had jurisdiction under 18 U.S.C. § 3231. This Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## STATEMENT OF THE ISSUES

I.     Fair moved for a downward variance on the grounds that the government manipulated his sentence by arranging multiple undercover purchases of controlled substances and setting the drug amount for those purchases. The district court denied Fair's motion without considering it on the merits because it concluded that such a variance is impermissible when the defendant voluntarily entered into the transactions in question. Was this error?

II.    When the district court resentenced Fair, it left in place the original terms of supervised release, which were based on an incorrect mandatory minimum and exceeded the maximum term of supervised release. Was this plain error?

## STATEMENT OF THE CASE

**I.     The Offense Conduct**

On April 16, 2003, an undercover officer with the Lincoln County Sheriff's Office, Deborah Stewart, went for the first time to the residence where Alvin Fair lived with his family in order to purchase half an ounce of crack. JA 127, 129. Stewart went with a confidential informant, Crystal Setzer, who acted as an intermediary because Setzer had previously bought crack cocaine at the house from Fair's brother, Rico Fair ("Rico"). JA 130. At the house, Stewart gave Setzer $360, and Setzer purchased crack cocaine from Rico. JA 130, 148.

After the transaction, Fair came out of the house and talked to Stewart. JA 130. As she was leaving he told her to "come check me out." JA 145. She responded "All right. I'll do." JA 145.

Stewart returned to the Fairs' house on June 11, 2003, where she met with Fair and told him that she wanted to purchase an ounce and an eight ball, or eighth of an ounce, of crack cocaine. JA 153. She paid $1,650 for the drugs and left. JA 154. When she returned to the task force office, the drugs were weighed and Stewart realized that she had been shorted "a total of four eight balls." JA 156. Stewart called Fair and told him that she had not received the correct amount of drugs. He told her to come back and he would "make it right." JA 156. Stewart returned to the Fairs' residence, and Fair provided her with additional crack

cocaine. JA 159. She purchased a total of 25 grams of crack cocaine that day. JA 228.

Stewart called Fair again on June 25, 2003, and asked if she could buy two ounces of crack cocaine. JA 161. He told her yes and asked her to come to his home. JA 161. Stewart went to the Fairs' house and brought a digital scale with her so that she could be sure to receive the correct quantity of drugs. JA 161. Fair and Stewart discussed prices for the drugs. JA 162. Fair then went inside to get the drugs while Stewart waited in a utility room on the side of the house. JA 162. But Fair had a very difficult time coming up with the correct amount of drugs. JA 162. They went "back and forth a lot because the weight kept coming up short." JA 162.

Although Stewart wanted to purchase two ounces or 56 grams of crack cocaine and an eight ball, Fair only provided a total of 51.6 grams on that date. JA 169, 173, 229. She paid him $2,400 for it. JA 171.

On July 1, 2003, Stewart called Fair to arrange another purchase for two ounces of crack cocaine, but she never intended to go. JA 174-75, 208. Instead, the Lincoln County Sheriff's Office executed a search warrant on the property and seized 121.3 grams of crack cocaine from the home along with various firearms. JA 178, 231, 301. Officers arrested Fair after searching his home. JA 208.

## II.      The Criminal Charges and Conviction

On November 18, 2003, the grand jury returned an indictment charging Fair and three co-defendants, including Rico and Setzer, with drug and gun charges. JA 16-20. Fair was charged with conspiracy to possess with intent to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. § 846 (Count One); possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841 on March 27, 2003 (Count Four), June 11, 2003 (Count Seven), June 25, 2003 (Count Eight), and July 1, 2003 (Count Eleven); knowingly and willfully using a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1) (Count Nine); and being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count Ten). JA 16-20. The government also filed a notice under 21 U.S.C. § 851 that it intended to seek enhanced penalties for Fair based on two prior North Carolina convictions: one for possession with intent to sell cocaine, and one for possession of cocaine. JA 561.

On March 22, 2005, the court granted the government's motion to dismiss Count Four without prejudice, and Fair proceeded to trial. JA 23. In its closing argument the government emphasized that Stewart, in her role as an undercover officer, "ask[ed] the defendant Mr. Fair, about giving her certain amounts and more and more of crack cocaine." JA 385.

The jury returned a guilty verdict on all Counts submitted to it (One, Seven, Eight, Nine, Ten and Eleven). JA 457-61.

### III.    The Original Sentencing Proceeding

The U.S. Probation Office prepared a Presentence Investigation Report ("PSR") and concluded that, based on a drug amount attributable to Fair of at least 150 grams, but less than 500 grams, he qualified for a base offense level of 34. JA 559.

In addition, the PSR calculated that Fair had eight criminal history points, which corresponded to a criminal history category of IV. JA 563. The PSR concluded that Fair's Guidelines range was 210 to 262 months on Counts One, Seven, Eight and Eleven, with a mandatory consecutive sentence of 5 years for Count Nine. JA 569. The PSR also noted that, because Fair had two prior "felony drug offense" convictions under 21 U.S.C. §§ 841(b)(1) and 851, he faced a 20-year mandatory minimum on Count One and a 10-year mandatory minimum on Counts Seven, Eight, and Eleven. JA 569. And the PSR recommended a minimum term of supervised release of 10 years in Count One; 8 years in Counts Seven, Eight, and Eleven; 5 years in Count Nine; and 3 years in Count Ten. JA 569.

At Fair's sentencing hearing on September 5, 2006, the district court adopted the PSR, finding an offense level of 34, a criminal history category of IV, and a Guidelines range for Counts One, Seven, Eight and Eleven was 210 to 262 months.

JA 467-68. The court found that Count Nine required a mandatory consecutive sentence of 60 months, and Count Ten carried a Guidelines range of 120 months that could be served concurrently. JA 468.

The court sentenced Fair to the statutory minimum sentences of 240 months' imprisonment on Count One, 120 months' imprisonment on Counts Seven, Eight, Ten and Eleven, to run concurrently, and 60 months' consecutive imprisonment on Count Nine, for a total of 300 months. JA 476-77. The court also sentenced Fair to the mandatory minimum terms of supervised release recommended in the PSR: 10 years in Count One; 8 years in Counts Seven, Eight, and Eleven; 5 years in Count Nine; and 3 years in Count Ten, to run concurrently with each other. JA 477.

Fair appealed his conviction and sentence, and this Court affirmed. *United States v. Fair*, 246 F. App'x 238 (4th Cir. 2007).

## IV.   The Motion to Vacate and Resentencing

On November 16, 2012, following this Court's decision in *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011), Fair filed a Motion to Vacate Sentence under 28 U.S.C. § 2255, arguing that his prior North Carolina convictions were not punishable by more than one year's imprisonment and, thus, did not qualify as felonies under 18 U.S.C. § 922(g) or as "felony drug offenses" under 21 U.S.C. § 841. Therefore, he argued that he was innocent of being a felon in possession of a firearm under § 922(g) and that his mandatory-minimum sentences under § 841

6

were erroneous. The government agreed that Fair's felon-in-possession conviction and his mandatory-minimum drug sentences should be vacated. JA 485-509, 517.

On June 24, 2014, the district court granted the Motion to Vacate, vacating the felon-in-possession conviction (Count Ten) and ordering resentencing on Counts One, Seven, Eight, and Eleven. JA 517-523.

Following the district court's order, the U.S. Probation Office filed a Supplement to the Presentence Report ("SPSR"). JA 574-77. The SPSR outlined the corrected statutory minimums applicable to Fair. For Counts One, Eight, and Eleven, the term of imprisonment was not less than 5 years nor more than 40 years under 21 U.S.C. § 841(b)(1)(B); for Count Seven, the term of imprisonment was not more than 20 years under 21 U.S.C. § 841(b)(1)(C); and for Count Nine, the term of imprisonment remained a mandatory consecutive sentence of 5 years. JA 576. The SPSR also concluded that Fair's new base offense level was 30, rather than 34, while his criminal history category remained IV. JA 576. Therefore, Fair's Guidelines range decreased to 135 to 168 months' imprisonment with a mandatory consecutive sentence of 5 years for Count Nine. JA 576. The SPSR also provided that the mandatory term of supervised release for Counts One, Eight, and Eleven was 4 years; for Count Seven was 3 years; and for Count Nine was not more than 5 years. JA 576.

Before his resentencing, Fair filed a Motion for Variance asking the court to vary downward from the Guidelines range by 60 months on Counts One, Seven, Eight and Nine. JA 578-80. In support of his requested variance, Fair argued that he possessed the firearm in Count Nine, not to further drug trafficking, but to protect himself, that the government engaged in impermissible sentence manipulation by setting up additional drug transactions instead of arresting him after the first sale, and that his service as a preacher inside the N.C. Department of Corrections establishes his good character. *Id*. Fair is serving a twenty-year state sentence on an unrelated charge, and the variance would have accomplished a sentence essentially concurrent to his state sentence. JA 578.

The district court resentenced Fair on September 2, 2014. JA 525-548. It refused to grant a downward variance. JA 544. The court acknowledged that Fair had substantial family support and also family members who need his help, had taken on the role of minister, and had plans for leading a law-abiding life after prison. JA 543. However, the Court refused to consider a downward variance based on Fair's argument that prosecutors "[drove] up his drug amount," ruling that "that is not a valid argument on his behalf," because "of course, he voluntarily entered into the transactions that he was held responsible for." JA 543-44. It concluded that it was not inclined to impose a sentence concurrent to his state sentence for unrelated criminal conduct, and accordingly sentenced Fair to the low

end of the Guidelines range for a term of imprisonment of 135 months for the drug counts followed by a 60-month consecutive sentence for the § 924(c) count. JA 544-545. It left all other aspects of the original sentence in place, including the concurrent terms of supervised release totaling 10 years. JA 545-55, 552.

Fair appealed the sentence. JA 549.

## SUMMARY OF ARGUMENT

First, the district court erred when it refused, based on a mistaken view that such arguments are unavailable, to consider Fair's argument that the government engaged in sentencing manipulation. JA 541. In fact, this Court has not reached the issue of whether a defendant can make a successful sentencing manipulation argument in this Circuit. *See United States v. Jones*, 18 F.3d 1145, 1154 (4th Cir. 1994) (refusing to reach the issue of whether sentencing manipulation has a basis in law in this Circuit). Because this Court has not foreclosed the issue, the district court had the authority to consider it on the merits, and it erred when it concluded that it could not do so.

Second, the district court plainly erred when it left Fair's original terms of supervised release in place in Counts One, Seven, Eight, and Eleven, totaling ten years. Because Fair had no predicate offenses and his drug amount placed his offenses under 21 U.S.C. § 841(b)(1)(B) and (C), the minimum term of supervised release for the Counts One, Eight, and Eleven, was 4 years, and for Count Seven

was 3 years. Furthermore, the maximum supervised release terms in Counts One, Eight, and Eleven was 5 years. The district court plainly erred when it reimposed terms of supervised release based on the wrong minimum sentences, and it further plainly erred because three of those four terms, including the 10-year term, exceeded the statutory maximum. This court should notice that plain error, vacate the supervised release terms, and remand to the district court for imposition of a corrected supervised release term.

## **ARGUMENT**

I. **The district court erred when it concluded that a sentencing manipulation argument cannot justify a downward variance.**

### A.    Standard of Review

This Court generally reviews "the district court's sentence under an abuse of discretion standard." *United States v. Layton*, 564 F.3d 330, 335 (4th Cir. 2009) (citing *United States v. Curry*, 523 F.3d 436, 439 (4th Cir. 2008)). The Court reviews the district court's legal conclusions de novo. *United States v. McManus*, 734 F.3d 315 (4th Cir. 2013). Review for abuse of discretion consists of two inquiries: first, whether the district court committed any significant procedural error and, second, whether the sentence imposed is substantively unreasonable. *Id.* When a district court fails to understand that it has discretion to vary from the Guidelines on a particular basis, the resulting sentence is procedurally unreasonable. *United States v. Herder*, 594 F.3d 352, 363 (4th Cir. 2010).

10

**B.    The district court's failure to recognize its discretion to consider Fair's sentencing manipulation argument resulted in prejudicial, reversible error.**

"Since the Supreme Court's decision in *United States v. Booker*, the federal Sentencing Guidelines have been 'effectively advisory,' and appellate review of district court sentences has been for 'reasonableness.'" *United States v. Hargrove*, 625 F.3d 170, 182 (4th Cir. 2010) (quoting *United States v. Booker*, 543 U.S. 220, 245 (2005)) (internal citations omitted). A district court may vary downward from the Guidelines range on the basis that, in a given case, the Guidelines fail to properly reflect the § 3553 factors. *Gall v. United States*, 552 U.S. 38, 51 (2007) (noting that a district court abuses its discretion if it fails to consider the § 3553 factors). A sentencing court abuses its discretion if it fails to recognize its authority to depart or vary from the sentencing guidelines. *Herder*, 594 F.3d at 363.

This Court has held that a district court procedurally erred when it failed to consider the reason for a requested variance based on a misunderstanding of its authority to do so. *Herder*, 594 F.3d at 363. In *Herder*, the district court "failed to recognize its discretion to sentence outside the crack cocaine Guidelines" after a defendant requested a downward departure or variance based on the sentencing disparities between drug convictions involving crack and cocaine. *Id*. The district court mistakenly assumed that it was not appropriate for it to consider a sentence below the Guidelines range because the Guidelines established the applicable

11

crack-cocaine ratios. *Id.*; *see also*, *United States v. Lynn*, 592 F.3d 572, 585 (4th Cir. 2010) (concluding that the district court erred by failing to consider the defendant's nonfrivolous arguments before sentencing him).

Just as the district court misunderstood its authority to grant a downward variance or departure in *Herder*, the district court here failed to understand that it could vary from the Guidelines based on a theory of sentencing manipulation, even when the defendant voluntarily entered into drug transactions. *See*, *e.g.*, *United States v. Roberson*, 517 F.3d 990, 995 (8th Cir. 2008) ("[A] district court that is aware of an argument does not abuse its discretion by not considering it. When a district court does not consider an argument because it is unaware of its power to do so, however, a remand is appropriate.")

Sentencing manipulation occurs when the government engages in sustained criminal activity with a defendant simply for the purpose of increasing the defendant's sentence. *See Jones*, 18 F.3d at 1153. The fact that a defendant voluntarily entered into a drug transaction does not invalidate a requested variance for sentencing manipulation. In fact, the concept of sentencing manipulation relies on the idea that a defendant, predisposed to enter into a drug transaction, is enticed

to enter into more transactions for a greater quantity of drugs by government agents who are acting to increase the defendant's sentence. *Id*. at 1152-53.[1]

In *Jones*, this Court expressly declined to speak to the "legal viability" of either "sentencing entrapment" or "sentencing manipulation" sentencing arguments. *Id.* at 1154. Furthermore, *Jones* was decided when the Guidelines were mandatory and variances did not exist, and the defendants in *Jones* sought, for the first time on appeal, to overturn their sentence based on an argument that law enforcement's conduct in structuring the controlled buys violated the defendants' due process rights and therefore justified a departure, because the Sentencing Commission had failed to take this theory into consideration in promulgating the Guidelines. *Id.* at 1151-52.

Here, the district court apparently believed, incorrectly, that this Court had rejected the viability of a sentencing manipulation argument and that the district court therefore had no authority to consider it. *See Yousuf v. Samantar*, 552 F.3d 371, 378 (4th Cir. 2009) (noting that courts may consider, on the merits, any issue before them which is "still an open question" of law), *aff'd* 560 U.S. 305 (2010). Because the availability of a variance for sentencing manipulation is still an open

---

[1] As this Court made clear in *Jones*, sentencing entrapment and sentencing manipulation are two distinct theories. 18 F.3d at 1152-53. Sentencing entrapment requires a lack of predisposition on the part of the defendant, while sentencing manipulation does not. *Id.*at 1152.

13

question in this Circuit, the district court erred when it failed to recognize its discretion to consider Fair's claim.

Fair sought a downward variance on the grounds that, after completing their first drug transaction with him on June 11, 2003, instead of arresting him, law-enforcement officers set up two additional drug transactions, with increased drug amounts. JA 579. Fair also asserted this argument at his re-sentencing hearing, arguing that a variance was warranted because the additional drug transactions drove the drug amount and Fair's resulting sentence higher. JA 528. The district court refused to consider Fair's argument because "of course, he voluntarily entered into the transactions that he was held responsible for. So that is *not a valid argument* on his behalf." JA 544. (emphasis added). In making that ruling, the district court refused to consider the argument on the merits. Instead, the court's "conclusory word on the matter" demonstrated its misunderstanding of both the law governing sentencing manipulation arguments and its discretion to consider such an argument. *Herder*, 594 F.3d at 363; *see also Koon v. United States*, 518 U.S. 81, 100 (1996) ("A district court by definition abuses its discretion when it makes an error of law."); *United States v. Brewer*, 520 F.3d 367, 371 (4th Cir. 2008) (recognizing that a district court cannot properly exercise its discretion if it is mistaken about the scope of that discretion).

At least three circuit courts have explicitly allowed district courts to consider sentencing manipulation arguments at sentencing. *See*, *e.g.*, *United States v. Torres*, 563 F.3d 731, 734 (8th Cir. 2009) ("Sentencing manipulation occurs when the government unfairly exaggerates the defendant's sentencing range by engaging in a longer-than-needed investigation and, thus, increasing the drug quantities for which the defendant is responsible."); *United States v. Beltran*, 571 F.3d 1013, 1019 (10th Cir. 2009) (After *Booker*, a defendant may request a variance based on a claim of sentencing factor manipulation in addition to a request for downward departure for outrageous government conduct; standard is whether government "extend[ed] a criminal investigation for the sole purpose of increasing the drug quantities for which a defendant is responsible."); *United States v. Ciszkowski*, 492 F.3d 1264, 1270 (11th Cir. 2007) ("sentencing factor manipulation occurs when the government's manipulation of a sting operation, even if insufficient to support a due process claim, requires that the manipulation be filtered out of the sentencing calculus"). This Court should take up the issue it declined to address in *Jones*, should follow these circuits, and should recognize sentencing manipulation as a viable argument for a variance from the Guideline sentencing range.

The district court's failure to recognize its discretion to consider the argument left open in *Jones* resulted in prejudicial, reversible error. By the time authorities conducted the first controlled transaction with Fair, they already had

conducted a previous transaction with his brother, Rico, at the same house and in Fair's presence, and Fair had invited the undercover agent to come back to the house and purchase drugs from him. They did not need to conduct additional transactions to establish a conspiracy. If the government had arrested Fair after the first controlled buy on June 11, 2003, the amount of drugs at issue in this case would be substantially less. At the very least, the Indictment would not have included Count Eight, involving a quantity of 51.66 grams of cocaine base. This would have lowered the total amount of drugs for which Fair was found responsible from 218.65 to 166.99 grams. In turn, that reduction would have decreased Fair's offense level from 30 to 28, and the corresponding Guidelines range would have decreased from 135 to 168 months' imprisonment to 110 to 137 months' imprisonment. The district court noted, at resentencing, that it was appropriate to sentence Fair to "the low end of his Guidelines" range. JA 545. Accordingly, if Fair's Guidelines range had been 110 to 137 months' imprisonment, it is likely that the district court would have sentenced him to the low end of that range, or 110 months. Consequently, the district court's procedural error prejudiced Fair, and this Court should vacate his sentence. *See Herder*, 594 F.3d at 363; *Roberson*, 517 F.3d at 995 (noting that remand is appropriate where a district court does not consider an argument because of a mistaken understanding of its power to do so).

II.     **The district court plainly erred when it left in place supervised release terms that were based on an incorrect mandatory minimum and exceeded the statutory maximum.**

    A.     **Standard of Review**

Fair did not object to the term of supervised release in the district court, so the district court's supervised release ruling is subject to review for plain error. *See United States v. Hughes*, 401 F.3d 540, 547 (4th Cir. 2005). To demonstrate plain error, Fair must show that: (1) an error occurred; (2) the error is plain; and (3) the error affected his substantial rights. *United States v. Cotton*, 535 U.S. 625, 631 (2002). If these three requirements are met, the Court may exercise its discretion to notice the error if it "'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *Id.* (quoting *Johnson v. United States*, 520 U.S. 461, 467 (1997)).

    B.     **The district court plainly erred when left the original terms of supervised release in place when resentencing Fair.**

Under pre-*Simmons* Fourth Circuit law in effect at the original sentencing, Fair had two prior "felony drug offense" convictions under 21 U.S.C. § 841(b)(1)(A) and (B). As a result, the statute in effect at the time of Fair's original sentencing required the district court to impose mandatory minimum supervised-release terms of 10 years on Count One and 8 years on Counts Seven, Eight, and Eleven. The court did so and ordered that all the terms run concurrently. JA 482.

17

When the district court vacated Fair's sentence to correct the *Simmons* error, it was required to correct the error in both the terms of imprisonment *and* the supervised-release terms. The court failed to do so. Instead, it re-imposed the same supervised-release terms without considering the reduced mandatory-minimum terms of release. Furthermore, all but one of those terms exceed the applicable statutory maximums. This Court should vacate the plainly erroneous supervised-release terms and order resentencing on that issue.

The statutory term of supervised release is determined by the intersection of 18 U.S.C. § 3583(b) and 21 U.S.C. § 841. Ordinarily, § 3583(b) provides the maximum term of supervised release for federal offenses, but it does not control when another statute "otherwise provide[s]" for a different term. For Class A and Class B felonies, the authorized term of supervised release is "not more than five years." 18 U.S.C. § 3583(b)(1) (2014). For a Class C or D felony, the authorized term is "not more than three years." 18 U.S.C. § 3583(b)(2) (2014). For Counts One, Eight, and Eleven, the maximum term of imprisonment under 21 U.S.C. § 841(b)(1)(B) is now 40 years. JA 576. That makes them Class B felonies. 18 U.S.C. § 3559(a)(2) (2014). The maximum term of imprisonment for Count Seven is now 20 years, making it a Class C felony. 18 U.S.C. § 3559(a)(3) (2014). And Count Nine is a Class A felony. JA 576.

18

Under 21 U.S.C. § 841(b)(1), the minimum term of supervised release depends on whether the offender has a "prior conviction for a felony drug offense." After correcting the *Simmons* error in Fair's original sentence, the minimum term of supervised release for Counts One, Eight, and Eleven is now 4 years under § 841(b)(1)(B). *See* JA 576. The minimum term for Count Seven is 3 years under § 841(b)(1)(C). *See* JA 576. The maximum term for Count Nine, which was unaffected by the *Simmons* error, remained 5 years under 18 U.S.C. § 3583(b)(1). *See* JA 576. The probation officer provided the district court with this information in the SPSR, and § 841 makes plain what minimum terms of supervised release apply.

But instead of considering and imposing these minimum terms of imprisonment, the district court adopted the minimum terms used at Fair's first sentencing, where the court had adopted the PSR and imposed minimum supervised release terms based on the *Simmons* error, resulting in the re-imposition of mandatory-minimum terms of 10 years in Count One and 8 years in Counts Seven, Eight, and Eleven.[2] JA 467, 482, 569. The court plainly erred in failing to

---

[2] The supervised release term on Count One originally was 10 years because that count originally was sentenced under § 841(b)(1)(A). As the result of drug-amount adjustments enacted in the Fair Sentencing Act, that count fell under § 841(b)(1)(B) at Fair's resentencing. For the same reason, Count Seven, which fell under § 841(b)(1)(B) originally, fell under § 841(b)(1)(C) at resentencing.

adopt the SPSR and to revise these erroneous minimum terms of supervised release when it resentenced Fair.

Furthermore, the district court plainly erred when it reimposed supervised release terms that exceed the statutory maximum. In *United States v. Good*, this Court held that when a defendant's minimum term of supervised release is 4 years under §841(b)(1)(B), his maximum term is 5 years as provided in 18 U.S.C. § 3583(b)(1). 25 F.3d 218, 221 (4th Cir. 1994). Thus, the law in place at the time of resentencing clearly provided that the maximum term of supervised release for Counts One, Eight, and Eleven is five years. Fair acknowledges *United States v. Pratt*, 239 F.3d 640, 648 (4th Cir. 2001), where this Court held that under § 841(b)(1)(C), no maximum term of supervised release applies, because the three-year minimum is the same as the statutory maximum term under 18 U.S.C. § 3583. Consequently, he is constrained to concede that although the court plainly erred in imposing an 8-year mandatory minimum term in Count Seven, that term does not exceed the statutory maximum. But the court plainly erred when it exceeded the statutory maximum term in Counts One, Eight, and Eleven.

Fair satisfies the first prong of the plain error test because, as just described, the district court's sentence was contrary to applicable statutes and was error. For Counts One, Seven, Eight, and Eleven, the district court imposed erroneous minimum terms of supervised release. And for Counts One, Eight, and Eleven, the

20

court imposed terms of supervised release that exceeded the statutory maximum term. Second, the error was plain because, as described above, it is "clear under current law." *United States v. Olano*, 507 U.S. 725, 734 (1993). Because this Circuit's settled law at the time of Fair's resentencing established that an error occurred, the error was plain. *United States v. Maxwell*, 285 F.3d 336, 341-42 (4th Cir. 2002).

Third, the error affects Fair's substantial rights, because it requires him to serve additional time on supervised release based on the application of erroneous minimum sentences and exceeding the statutory maximum. "Because the terms and conditions of supervised release are a substantial imposition on a person's liberty, the erroneous extension" of a term of supervised release affects a defendant's substantial rights. *Id.* at 342. In *Maxwell*, the Court held that a supervised release term that exceeded the statutory maximum by 11 months affected the defendant's substantial rights and "affected the fairness, integrity, or public reputation of judicial proceedings." *Id*. Here, the court's error increased Fair's minimum sentence by 6 years, and it increased his maximum sentences by five years.

Finally, the extension of Fair's supervised "seriously affects the fairness, integrity or public reputation of judicial proceedings," and failure to correct the error would be "fundamentally unfair"; "no court of justice would knowingly require a man to endure significant restrictions on his liberty as provided under

21

supervised release for [more than] a year longer than deserved." *Id.* at 342-43.
Fair's supervised release sentence is plainly erroneous, and this Court should
notice the error, vacate Fair's sentence, and remand to the district court with
instructions to proceed under the proper statutory provisions governing supervised
release.

## CONCLUSION

For the reasons stated above, this Court should vacate Fair's sentence and
remand for resentencing.

## REQUEST FOR ORAL ARGUMENT

Fair respectfully requests oral argument and submits that such argument will
aid the Court in deciding the issues presented in this appeal.

DATED this 18th day of December, 2014.

Respectfully submitted,
Ross Richardson, Executive Director
Federal Defenders of
Western North Carolina, Inc.

/s/ Ann L. Hester
Ann L. Hester
Assistant Federal Defender
129 W. Trade St., Suite 300
Charlotte, NC 28202
(704) 374-0720
Counsel for Appellant
Alvin Fair

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [*5,139*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

[    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: December 18, 2014                    /s/ Ann L. Hester
                                                          *Counsel for Appellant*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 18th day of December, 2014, I caused this Brief of Appellant and Joint Appendix to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Amy E. Ray
> OFFICE OF THE U.S. ATTORNEY
> 100 Otis Street, Room 233
> Asheville, North Carolina  28801
> (828) 271-4661
>
> *Counsel for Appellee*

I further certify that on this 18th day of December, 2014, I caused the required copies of the Brief of Appellant and Joint Appendix to be hand filed with the Clerk of the Court and a copy of the sealed volume of the Joint Appendix to be served, via UPS Ground Transportation, upon Counsel for the Appellee, at the above address.

/s/ Ann L. Hester
*Counsel for Appellant*